**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-197-DLB**

**MOHAMMED AZAZUL HOQUE**                                    **PETITIONER**

**v.**                          **MEMORANDUM OPINION AND ORDER**

**LES K. HILL, et al.**                                      **RESPONDENTS**

* * * * * * * * * * * * * * * *

**I.      INTRODUCTION**

This matter is before the Court on Petitioner Mohammed Azazul Hoque's Petition

for Writ of Habeas Corpus (Doc. # 1).[1]  The Federal Respondents[2] filed a Response to

the Petition on May 19, 2026, conceding that the Sixth Circuit's decision in *Lopez-Campos*

*v. Raycraft*, -- F.4th --, 2026 WL 1283891 (6th Cir. May 11, 2026) controls in this matter.

(Doc. # 4 at 2).  For the following reasons, the Court will **grant** the Petition.

**II.     FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is a native and citizen of Bangladesh who entered the United States near

Lukeville, Arizona on February 11, 2024.  (Doc. # 1 ¶ 35).  DHS initially detained

---

[1]      Also before this Court is Jason Maydak's Motion for Substitution of Party (Doc. # 5).  In support of his Motion Maydak, as the county-elected Jailer for Boone County Detention Center, asks to be substituted as the Defendant in place of Les K. Hill.  (Doc. # 5 at 1).  That Motion is **granted**. The Court will direct the Clerk to modify the docket.

[2]      Petitioner files this action against Todd M. Lyons, Acting Director, U.S. Immigration and Customs Enforcement ("ICE"); Markwayne Mullin, Secretary, U.S. Department of Homeland Security ("DHS"); Todd Blanche, Attorney General; Daren K. Margolin, Director, Executive Office of Immigration Review (collectively, the "Federal Respondents"); Les K. Hill, Sheriff, Boone County Jail.  (Doc. # 1 ¶¶ 12-18).

1

Petitioner, but on February 15, 2024, he was released on his own recognizance pursuant to 8 U.S.C. § 1226(a).  (*Id.* ¶ 36).  Since this release, Petitioner has lived in the United States continuously.  (*Id.* ¶ 38).

On January 23, 2026, immigration authorities arrived at Petitioner's place of employment and subsequently arrested him.  (*Id.* ¶ 42).  Petitioner was transferred to the Boone County Jail in Burlington, Kentucky, where he remains in ICE custody. (*Id.*).

On May 4, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus. (*Id.*).  The Court directed Respondents to respond to the Petition on May 5, 2026.  (Doc. # 5).  The Federal Respondents filed their Response on May 19, 2026, acknowledging that the Sixth Circuit's decision in *Lopez-Campos* controls.  (Doc. # 6 at 2).

## III.    ANALYSIS

Petitioner argues that his present detention violates the Immigration and Nationality Act ("INA") and his right to due process under the Fifth Amendment.  (Doc. # 1 at 17).  As a result, he requests that the Court order his immediate release or, alternatively, an individualized bond hearing under 8 U.S.C. § 1226(a).  (*Id.*).

### A.    Relevant Framework

On May 11, 2026, the Sixth Circuit issued its decision in *Lopez-Campos et al. v. Raycraft et al.*, wherein it determined that § 1226 is the properly applied statutory provision for detaining noncitizens like Petitioner who are not "seeking admission" into the United States.  --- F.4th ---, 2026 WL 1283891, at *11 (6th Cir. May 11, 2026).  In its opinion, the Sixth Circuit affirmed the judgments of four district courts below, determining that the "text, canons, and past practice" of two statutes all support the conclusion that the petitioners were not subject to the mandatory detention provisions of § 1225.  *Id*. at

2

*6. Accordingly, the Circuit rejected the government's position that § 1225 governs noncitizen detainees, concluding that "[t]o hold otherwise would subject long-term law-abiding residents in the United States . . . to the hardship of mandatory detention without due process." *Id*. at *13.

The same reasoning applies here. Petitioner has been in the United States for over two years. (Doc. # 1 ¶ 35). After being detained at the border he was immediately released on his own recognizance years prior to his present detention. (*Id.* ¶ 36). The Federal Respondents acknowledge that *Lopez-Campos* controls. (Doc. # 6 at 2). Specifically, the Federal Respondents recognize that "under the Sixth Circuit's reasoning, Petitioner is detained under § 1226(a), and he is entitled to file a motion for custody redetermination with the immigration court." (*Id.*). Accordingly, pursuant to the Sixth Circuit's recent opinion in *Lopez-Campos*, the Court concludes that § 1226 governs Petitioner's detention.[3]

### B.    Due Process

Because the Court has concluded that § 1226(a) is the appropriate statutory framework to apply to Petitioner, the Court must now determine whether his present detention violates his due process rights. The Sixth Circuit has concluded that petitioners

---

[3]    The Court notes that Respondents argue that the Court should require that Petitioner exhaust his administrative remedies before issuing relief. (Doc. # 6 at 3). First, the Court notes that it has previously concluded that exhaustion in these cases would be futile and is therefore not required. *See Castaneda-Castano v. Olson*, No. 26-34-DLB, 2026 WL 622863, at *5 (E.D. Ky. May 4, 2026) ("Under the test consistently applied by courts in the Sixth Circuit, prudential exhaustion is inappropriate in this case."). Moreover, the Federal Respondents explicitly state that they are "evaluating whether to seek further appellate review of *Lopez-Campos* . . . . [I]ncluding the right to appeal on the issue of proper detention authority for aliens like Petitioner[.]" (Doc. # 6 at 2 fn. 2). "Given the uncertainty how Federal Respondents will proceed, the Court will rule on the pending Habeas Petitioner without requiring administrative exhaustion." *Torres Siles v. Warden, Butler Cnty. Det. Facility*, No. 1:26-cv-434, 2026 WL 1345581, fn. 2 (S.D. Oh. May 14, 2026) (declining to requiring administrative exhaustion because the federal respondents indicated that they may appeal *Lopez-Campos.*).

like Hoque have "passed through our gates" which affords them protection by the Fifth Amendment's Due Process Clause.  *See Lopez-Campos*, 2026 WL 1283891, at *11. The Fifth Amendment provides, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. V.  The Supreme Court has repeatedly held that the Due Process Clause extends to all persons, regardless of citizenship status.  *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025))).  To determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test to weigh

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

It is undisputed that Petitioner has a cognizable liberty interest in avoiding detention.  *See Lopez-Campos*, 2026 WL 1283891, at *13 (a person's liberty interest in being free from detention "is the most fundamental interest protected by the Due Process Clause and is shared by citizens and noncitizens alike."); *Hamdi v. Rumsfeld*, 542 U.S. 507, 531 (6th Cir. 2004) (affirming "the fundamental nature of a citizen's right to be free from involuntary confinement by his own government without due process of law[.]").  Indeed, "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause[.]"  *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992*); see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart

4

of the very liberty that [the Due Process Clause] protects."). Our immigration law has long recognized that noncitizens have an interest in an individualized hearing prior to detention in connection with immigration proceedings. *See Yamataya v. Fisher*, 189 U.S. 86, 101 (1903). Further, the Supreme Court has previously required individualized hearings for deprivations of interests less fundamental than Petitioner's interest in freedom from detention. *See Goldberg v. Kelly*, 397 U.S. 254, 268 (1970) (requiring an individualized hearing prior to the termination of welfare benefits).

Second, the risk of erroneous deprivation of that interest is high if Petitioner is not afforded a detention hearing. *See Edahi v. Lewis*, No. 4:25-cv-129-RGJ, 2025 WL 3466682, at *14 (W.D. Ky. Nov. 27, 2025) (holding that detention "without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest") (citation omitted); *Yao v. Almodovar*, No. 25 Civ. 9983 (PAE), 2025 WL 3653433, at *11 (S.D.N.Y. Dec. 17, 2025) (finding that ICE's "discretion-free detention of [the petitioner] abridged his rights under [8 U.S.C.] § 1226 and violated due process") (citations omitted). To date, Petitioner has not had a detention hearing at which his eligibility for bond is determined on the merits of his individual circumstances. Thus, Petitioner's present detention creates a high risk of an erroneous deprivation of his liberty interest. Accordingly, the second *Mathews* factor favors Petitioner.

As to the third factor, the Federal Respondents have not put forth any argument whatsoever advocating for the United States' interest. The Court, on its own, concludes that the United States likely has a strong interest in immigration proceedings, but certainly, the "existing statutory and regulatory safeguards" which this Court discussed at length about above, "serve the governmental interest in public safety." *Barrera v. Tindall*,

No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *7 (W.D. Ky. Sept. 19, 2025) (quoting *Günaydin v. Trump*, No. 25-cv-01151, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025)). Accordingly, all three factors weigh in favor of Petitioner.

Petitioner claims that immediate release is the most appropriate remedy in this case. (Doc. # 1 at 17). This Court agrees with Petitioner that his Fifth Amendment due process rights were violated when he was detained without access to an individualized hearing. However, the Court disagrees that immediate release is the proper remedy. Rather, this Court agrees with other district courts in the country which have concluded that the proper remedy to this violation is a constitutionally adequate bond hearing in which the government bears the burden of proof by clear and convincing evidence. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 39 (1st Cir. 2021) ("[T]he government must bear the burden of proving dangerousness or flight risk in order to continue detaining a noncitizen under section 1226(a)"); *Velasco Lopez v. Decker*, 978 F.3d 842, 846 (2nd Cir. 2020) (finding that the "district court correctly ordered a new bond hearing where the Government bore the burden of proof"); *Azalyar v. Raycraft*, No. 1:25-cv-916, 2026 WL 30741, at *5 (S.D. Ohio Jan. 2, 2026) ("Respondents must provide a custody redetermination hearing at which the government bears the burden of justifying [the petitioner's] continued detention"); *Rajesh v. Barr*, 420 F. Supp. 3d 78, 87-88 (W.D.N.Y. Oct. 29, 2019) ("The Court agrees with the district court cases holding that allocating the burden to a noncriminal alien to prove he should be released on bond under § 1226(a) violates due process because it asks '[t]he individual . . . to share equally with society the risk of error when the possible injury to the individual is significantly greater than any

6

possible harm to the [Government]'" (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979))).

## IV.    CONCLUSION

Accordingly, for the reasons stated herein, **IT IS SO ORDERED** as follows:

(1)    Hoque's Petition for Writ of Habeas Corpus (Doc. # 1) is **GRANTED**;

(2)    Jason Maydak's Motion to Substitute Party (Doc. # 5) is **GRANTED**, the Clerk of Court shall **MODIFY** the docket to substitute Jason Maydak for Les K. Hill as one of the Respondents in this proceeding;

(3)    Respondents are **ORDERED** to **immediately release** Petitioner, or in the alternative, provide him with a **constitutionally adequate bond hearing where the government bears the burden of proof by clear and convincing evidence** under 8 U.S.C. § 1226(a) **within seven (7) days of the date of this Order**; and

(4)    Respondents shall file a Status Report with this Court **on or before June 3, 2026** to certify compliance with this Order.  The Status Report shall include when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

This 20th day of May, 2026.



Signed By:

*David L. Bunning*

Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2026\26-197 MOO granting habeas.docx